Good morning, Your Honours. May it please the Court, Chiege Karuokwara for Mr. Eric Henderson. Your Honour, we are asking the Court to find that the District Court erred in finding a four-level enhancement for possessing a firearm in connection with another felony for the reckless endangerment enhancement. And after the Court agrees with us to find that the sentencing posed on Mr. Henderson was unreasonable and remanded back for re-sentencing. With regards to the possession of a firearm in connection with another felony, Mr. Henderson pled guilty to 922 G1, possession of a firearm by a felon. A pre-sentence report was prepared. A four-level enhancement was added, finding that he possessed a firearm in connection with another felony. The felony was that he was subject to a domestic violence protective order and relying on 18 U.S.C. 922 G8. Mr. Henderson was not aware, had no notice of that enhancement. The government could have charged him with violating that statute and they didn't. So the objection was made by plea counsel. Are you familiar with a case called United States v. Dunford? U.S. v. Dunford? I'm not aware of that one, Your Honour. Alright, let's change the scenario here just a little bit. Exactly the same facts, but the government indicts the defendant on two counts, one for violating G1, one for violating G8, and two convictions, two sentences. Would those convictions be constitutionally valid? I would say they would be valid because he was indicted on both G1 and G8, so he had notice whether he pled or was convicted at trial. In the case of Mr. Henderson, there was no notice. The government could very well have done that and they chose not to do that. He pled without a plea agreement. His factual basis document says you possessed a firearm on a particular date when you'd previously been convicted of a felony. I think Dunford has decided that case and said it was unconstitutional to have. And I know that there's a case currently pending before the U.S. Supreme Court, Rahimi, that's going to be argued on November 7th about whether or not G8, 922 G8 is even constitutional based on the decision by the Fifth Circuit. But our point is that helps Mr. Henderson's case. But the government in his brief argues about Mr. Henderson admitted the elements of the 922 G8. He did not. He admitted that he was a felon and that he possessed a firearm. Did not admit that, yes, I was on day protective order, yes, I had notice, I had all of that. So we say because of all of that, it was improper to include the enhancement. Also, in connection with another felony enhancement to apply, you have to show that the connection was somehow facilitated or otherwise enhanced. That did not happen in this case. When I argued that the victim of the domestic violence protective order is not the victim of the assault that occurred in June of 2020, that's the point that I'm making. You would say if it was the victim, then you already know you're subject to a protective order with this individual. And then you carry a firearm. The victim of the protective order is completely different from the victim of the assault that occurred in June of 2020. So we'll say based on all that, there's no connection to that other felony. All he had noticed on the statement of relevant conduct that in the file, the factual basis, the indictment was all as to possession of a firearm by convicted felon. The alleged felony of violating a protective order has nothing to do with the case. And while I said the protective order in state court did not advise Mr. Henderson that he couldn't possess a firearm, the government points to page one of the protective order says that even though you may not be prohibited from possessing a firearm, you could still be prosecuted in federal law. Okay, you could be prosecuted in federal law, but for what? For a felony, for a misdemeanor, for what? He doesn't know that. And I argued even though we have the protective order, I'm not arguing whether it was valid or not. We don't have any proof that he was there. We don't have any proof that he was there. The protective order was tendered during the sentencing hearing. Sentencing hearing occurred in May of 2021. The offense conduct occurred in June 5, 2020. He was arrested and then placed in federal custody in September 2020. It wasn't until the sentencing hearing that the document was brought before the court and suppositions were made. You were there, you had to know this, you had to know that. So we say because there's insufficient evidence that he was there and that the felony of possession of a firearm for which he had noticed had no connection to the 922 G8 offense, that the court should find that that enhancement should not apply. In preparing for oral arguments, I went back to a case that was decided by this court in 2020. That was the case of Lockhart, I think, Jessamy. In that case, plea counsel had led him to 922 G1. At sentencing, or when he received a pre-sentence report, he found out that he was subject to the armed career criminal enhancement. Some conversations occurred during the sentencing and plea counsel said, I told him, I didn't tell him, but we talked about it. In his initial appeal, this court affirmed and said he had to do. Then there was a request for an in-bank hearing. The court heard it and they vacated the conviction and said at his plea hearing, he was advised, you're charged with 922 G1, your maximum sentence is going to be 120 months. He had no idea that ACCA would apply, especially because the convictions that were used were juvenile convictions. And then he ended up with a 180-month sentence. And based on that, this court vacated. I think it's analogous to Henderson's case. He had no idea he would be subjected to all these additional enhancements, except that I pled guilty to a firearm by felon. I am a felon, and this is what I'm looking at. So that's my argument on that. The second one issue is with regards to the reckless endangerment. Obviously, we filed our briefs in 2021. This case decided is Shriver's case in December 2022, which I think is on all fours with that case. And in that case, just like this one, Mr. Henderson pointed a firearm at someone. The police were called. He fled. He put the gun under a car and then was arrested. So flight with a loaded firearm without more should not be enough to apply the additional two-level reckless endangerment enhancement. And I find my reading of it is that Henderson is really on all fours with Shriver's because there's no additional endangering fact, no evidence except for the initial person he pointed the gun and fled. That shows that the two-level enhancement should apply. If the court agrees with me with all those two, then I'll ask the court to find that Mr. Henderson's 60-month sentence, as the government says, a 14-month upward variance. Well, 14 months is a lot of time for anybody who's locked up. None of us has been to jail or been locked up, but I would argue to the court that 14 months is a long time for anybody, especially if the court looked at Mr. Henderson's long criminal history. He does have a long criminal history. He does have issues. The court recognized that he has had some terrible childhood. I think it's unreasonable for the court to go look at juvenile adjudications. In North Carolina, juvenile adjudications, juvenile delinquency cases are not crimes. I think it was improper to go look at records of Mr. Henderson. Law has changed now in North Carolina. Cases are petitioned in juvenile court from December 2021 if you're under the age of 18. But at the time Mr. Henderson was a minor, any charges from 9 to under 16 are processed in juvenile court. And I know there's about seven or eight pages of his juvenile adjudications or juvenile involvement. And I think because the standard is different, because juvenile adjudications are not crimes, the standards are different. They're actually civil proceedings. I think it was wrong for the court to use that to enhance Mr. Henderson's sentence and say, you know, you've been committing crimes, you've been doing this for so long. In addition, the government argued that but for five days, Mr. Henderson would have had to look at a sentence of about 85 months because his conviction, where he served 100 months in federal court, was just the cutoff point, was five days. Otherwise, he wouldn't have counted. Well, he has served 100 months. He's also served years for all his other additional time. So I don't think it's fair or it's reasonable to look at juvenile adjudications, juvenile delinquency history, and look at a crime that he has been punished for, and then upward vary. The government had asked for a sentence at the top of the guidelines range, which was 46 months. Mr. Henderson wanted the lower end, which was 37 months. And the court varied upward and said, you know, your criminal history, the only time you're not committing crimes is when you're locked up and your history started from the age of nine. So I think based on all those factors that the court sentence was unreasonable, I'll ask the court to find that the two enhancements should not have been applied, the reckless engagement and possession of a firearm in connection with another felony, and then find that the sentence was unreasonable. I don't know if you all have any questions for me. Just one thing, counsel. Excuse me. In your brief, you suggested this was a plain error review. But I think you may have some good news. I don't think it's plain error. Maybe the Robinson case, you preserved it in terms of your objective. You may not have made the same arguments. But I think on our precedent, this wouldn't be plain error. Thank you. The government did the same thing, too. Thank you. And the only reason I said that was I know that plea counsel only argued the intimate partner. I didn't really. That's not what I would have raised. I didn't raise that. So I didn't want it. She didn't raise the argument in lower court, so she's raising it in there. So that's just why I wanted to preserve that issue. Do you have anything further? Any questions? Thank you. Thank you. Mr. Enright. Thank you, Your Honor. May it please the court, Anthony Enright for the United States. I'd like to start, if I could, by answering Judge Agee's question. Would convictions for both a 922G8 and a 922G1 offense simultaneously be constitutionally valid under Dunford? I think this court answered that question pretty squarely in a case called United States versus Shorter. The answer is yes. The case is Shorter 328. Under the same facts, one act of possession. One act of possession, two different predicates. It wasn't G8. I think it was G5 and Shorter. I think it was an alien in possession and felon in possession. What the court said was the convictions are not an error so long as he doesn't receive concurrent or consecutive sentences. So the convictions can be okay. And what we have here doesn't present a double jeopardy problem. The kind of double jeopardy problem that was raised in Dunford or in here because we only have one conviction. And what the Supreme Court said in a case called Witte 515 U.S. 389 is that enhancing a sentence for one offense based on another offense doesn't constitute double punishment under the double jeopardy clause. So the concerns raised by Dunford and the concerns raised by Shorter, addressed by Shorter, don't arise here. You could have two different convictions, but here that's not really what's going on. You have an enhancement for a 922 G1 offense based on his also committing a 922 G8 offense. But Dunford is a case where there's a felon in possession and also a person who is a drug user in possession. Yes, Your Honor. Same possession and the court found one conviction. Correct, Your Honor. And that's what we have here, one conviction. And then in U.S. v. Blount, which talks about the purpose of the enhancement, this court said that the purpose of the enhancement is to assure the defendant receives a more severe punishment if he commits a separate felony offense. Correct, Your Honor. But if the defendant can't be convicted of a separate felony offense, have they committed a separate felony offense? Well, I think, so, I have two parts to that answer. The first is that the guideline specifically says the enhancement applies even if no conviction is obtained. But the second is that under United States v. Shorter, this court held that you can have, it's not error to sustain two convictions for one possession with two 922 G predicates, so long as there are not concurrent or consecutive sentences imposed. So it would be possible to have the two convictions so long as that sentence wouldn't exceed the 10-year maximum for a 922 G offense and he doesn't have anything else like, for example, a special assessment or the like. And that's what we have here. So it would be possible, I think, under the plain language of the statute, to enhance the sentence for the 922 G1 offense. I don't think there's any dispute here he was sentenced for the 922 G1 offense based on the fact that he had also committed the offense. But it's a torturous view of the rule of lenity to take your view. Basically, you can do a workaround by saying, oh, well, it's not two convictions, it's just one. And, well, it's not two punishments. There are two punishments. You're punishing for the underlined offense and you're enhancing. So it's a, are you not? Well, the Supreme Court specifically addressed that in Witte and said, no, those are not two punishments. It's not for purposes of the Double Jeopardy Clause. The guidelines themselves permit double counting. And they explicitly address this situation where you have one possession doing multiple things. So I don't think, it's not double punishment in the constitutional sense under Supreme Court precedent. And I don't think it's an impermissible double punishment. I also think it's particularly appropriate. Some of these older cases talk about, you know, advancing another sentence. And after Ray Haif, I think the Supreme Court made very clear that that status and your knowledge that you're acting with that status is a culpability enhancing factor. It makes a big difference that you know you're a felon and you've done this anyway. It makes a big difference that you know you're subject to a protective order and you've done this anyway. And I do want to emphasize something. I want to correct something my friend said, which is there's a question about whether he had noticed this. It was undisputed in the district court on page 121 of the Joint Appendix that he was at the hearing where that domestic violence protective order was adjudicated and issued. So he definitely had noticed that he had done that. He also had noticed that the enhancement was on the table because he received his pre-sentence report. And to respond to your Honor's question, to my friend, I do think plain error is appropriate, particularly for this issue because the standard is, did it put the district court on notice? Did it inform the district court of a true basis for his objection? The district court would not have had any reason to look at double jeopardy principles. Are you saying this in terms of your analysis of Robinson? That is my analysis of Robinson, Your Honor. And I don't know, maybe we're talking about a different case. But my understanding, Your Honor, is that Rule 52 and Rule 51 requires the court to inform, the defendant to inform the district court not just of the objection, but of the basis of that objection and give the district court notice so that it can decide the issue first. And I think plain error would apply. And even if it doesn't, Your Honor, I'll note that the defense didn't address Dunford or double jeopardy principles in his opening brief. So there would also be an abandonment here. Let me ask you about something slightly different. Sure. What is another felony offense for purposes of the enhancement? And there's note 14 in the application notes that defines another felony offense as any offense other than the firearms possession offense. So here we have a firearms possession offense for being a felon and for being subject to one of these orders. Under that definition, isn't that excluded from another felony offense? No, Your Honor, because they are different offenses. They have different elements. Each one has an element. Right, I understand that. But they're both a possession offense. They are a possession offense, but they are not the possession offense. And the guidelines, the Sentencing Commission explicitly addressed this a couple of years ago because it used to say... So where do we find that? Well, this is a question I'm answering for the first time, so I apologize. I didn't put it in my brief. But I will tell you the history of this is in a case called United States v. Juarez, 5th Circuit addressed, 626 Fed 3rd, 246. Say Juarez? Juarez, yes. J-U-A-R-E-Z. So they addressed this another felony offense definition. Yes. Basically, the history is the Sentencing Commission, the application note used to say it excludes any possession offense. And there was a circuit split over whether it just excludes the instant offense or any possession offense. And the Commission changed it to say the offense, that is the offense of conviction. That's how at least courts, as far as I know, have unanimously construed it as excluding the offense of conviction and including other possession offenses. And there are examples. I don't have. I looked into that because I was also a little bit... I noticed that there aren't a lot of examples of this occurring. There are examples of similar things. There are examples of enhancements. This court has upheld, for example, enhancements for assault with a firearm where there's an overlapping element. Firearm possession. Firearm assault. That's use. That's use. And the enhancement is very clear as it relates to use. Yes, Your Honor. As opposed to facilitating another felony offense. Yes, Your Honor. And I do think the application note is intended to distinguish the possession offense, the instant one, from others. The case does have that history. I will note that this is also another issue that the defense did not raise. And that's the reason I'm giving you these cases orally rather than in writing. And I apologize that I know that makes things a little inconvenient. But that's my... I don't have an excuse, but that's my explanation for it. I do think it meets... To address some of the defendant's arguments, there's no requirement in 922G8 that the defendant possess the gun in the presence of any person, let alone the person named in the protective order. So that wouldn't be a defense. Possessed a qualifying firearm subject to a court order meeting all of 922G8's requirements, an intimate partner. Just for a second, Mr. Murray. That Juarez case you're saying, is that a 922G case? I believe it's a 922G case. It's not on all fours with this, but it gives the history of that guideline change and the history of the courts interpreting it. What holding do you proffer to the court that would be helpful to the government in that case? I don't hold... I don't know that the... The holding says that the... Is that the comment that Judge Agee asked me about excludes only the instant offense. It doesn't exclude other offenses that are gun possession cases. So is it also at the same time that they added to the application notes the second portion of that dealing with burglary and possession in connection with a drug trafficking crime? I don't know if those were at the same time or not, Your Honor. I'm sorry. I don't have that information. Are you aware of any other case anywhere where there's been an enhancement for two 922... In a 922G case for another 922G offense? I am not, and I thought that was unusual, which is why I looked at the history of this. And I think the fact that it excluded all possession offenses at one point in time might explain part of it. But I will note that the... I don't know that it makes any difference, but as a useful research tool, the district court's probation office contacted the Sentencing Commission about this and reported that the Sentencing Commission endorsed it. You apply for a level enhancement when somebody has two different 922G qualifiers. But isn't it... The thing is that you have to be doing something different. I don't think so, Your Honor, because... In this instance here, what you're saying is that possessing the gun, you're trying to distinguish that, saying that's another offense, not the offense, because there's an order out there. But it doesn't require anything additional to what he did for the conviction under 922G1, which is to possess. Now, out there is an order that makes that perhaps another crime, but it doesn't... It's not additional, like for a gun with drugs. Then you're facilitating drugs. All the ones you use, you assault someone. You do something else. You brandish it rather than just possess it. But here, there's nothing to be done that puts him in eight other than the fact that there's an existing order, which you could have charged. But instead, you charge one and then say that's distinguishable because at the same time, he did two things. No, at the same time, he did one thing that covered two offenses. But he didn't do anything additional. So you can't... To me, it's hard to say you're getting around another offense other than the one here. Well, Your Honor, I think it is another offense, but I think the guideline addresses that concern. Because the guideline focuses on the act of possession. That's what 2K2.1b6b says. Did he possess the firearm in connection with another offense? And when we're talking about drug cases, it's often a situation where the act is raised. The guideline focuses on does it facilitate another offense, not the mere possession. The guideline focuses on facilitate another offense. Yes, Your Honor. And the other offense wouldn't come to fruition. It wouldn't be possible, as the commission reported to the probation office and the PSR, wouldn't be possible without the possession of a firearm. It made it possible. It only needs to have some purpose or some effect with respect to that offense. And here it's an element of that other offense. And the act is possession, but possession is the act the guidelines focus on. And I think certainly before Rahaif, the idea that he didn't do anything more culpable might have been stronger because you didn't have to necessarily know you were doing, you were prohibited for two different reasons. After Rahaif, you have to know you're a felon and you have to know you're subject to this order and still choose to possess that firearm. And absolutely, there are different harms. Somebody who's subject to a domestic violence protective order, this has findings that he poses a danger, a physical danger to another individual. That's a more acute and different concern than he has previously been convicted of a felon. Well, I can see where that's a conviction question. You've got a choice for the prosecution to make there, but here we're on an enhancement. Obviously, I haven't read Juarez, so I don't know what the history is. But I wonder whether that's more of a situation where at one time it excluded any possession offense because in the facts of this case, say the day after, he possessed a firearm in connection with a drug sale. So you clearly have two different acts, maybe the same gun, and that would seem to qualify as an enhancement because it's not the same act of possession that you have here. But I guess until we read those cases, it's pretty hard to know whether there's anything there. The courts have said, and I think this court has even said, that the requirement is not an onerous one. Here you have a situation where he's possessing a firearm, and it clearly closely connects one offense to the other. And that's really all that the language requires. I would expect, because it has done that before, if it wanted to exclude possession offenses, it would do that. It doesn't, and I think that that is simply a straightforward application of the language, Warren's application of this. I will move on. Let me ask you about, I was going to move on as well. I was going to ask you about the Shivers case. Certainly. On page 110 of the appendix, during sentencing, the court said the act of running away from armed law enforcement with a loaded rifle was reckless in and of itself. And then Shivers came out after the sentencing, certainly. But why does Shivers not address that issue and requires to send it back? I think Shivers addresses that issue, that limited issue. It doesn't require to send it back because he did more, and the court found he did more. He hid the gun under a car, a truck, on a public street, where the court had found in the pre-sentence report adopting those undisputed facts that there was a crowd of people nearby. And the case before Shivers, Dennings, explicitly endorsed this court's prior decisions, which were unpublished, but endorsed in Dennings, saying that you create an unreasonable risk when you put a firearm that close. But Shivers held differently, did it not? No, Your Honor. Shivers addressed a situation where he tossed the firearm in the presence of police who had put it around the corridor. And it's explicitly distinguished the prior precedent based on that. That's not what he did here. Shivers, you know, you had a big crowd. It was in a nightclub area, so there were people around. But it seems like on the record in this case, and that just may be because without Shivers, they didn't think they needed to put on anything else. We really don't know anything other than that the individual fled, he had a gun, and he put it underneath a vehicle. So we don't know whether that was, you know, next to a kindergarten with a lot of kids close by, or whether it was in an isolated place. We actually do, Your Honor. You're right. Where is it? We didn't talk about it at sentencing, probably because Shivers wasn't out yet. But in the pre-sentence report, which was adopted without objection, it says here, a crowd of people was close by. So here we're talking about almost the opposite scenario. So why does that in and of itself create this serious deviation from care? Well, he put a firearm under a car in a public street. But that happens all the time. People are running away all the time, and they toss the gun because they don't want to get caught with the gun. But that's not enough to merit this enhancement. There has to be more than that. And so even if we take as a given that there was a crowd around somewhere, we don't know anything more than that. Well, I'm keenly aware of the perils of arguing with Your Honor about two decisions I think Your Honor wrote. But I read Dennings and Shivers as saying that mere arms... Didn't Dennings, where the guy was running and they were fighting on the ground and he was trying to pull his gun out or something? He had the gun in his hand in his waistband. And what this court held was whatever he was doing, even if he was just carrying it, that would be enough, and found that the enhancement applied even before the struggle occurred. So what it doesn't, and I don't mean to be too, I don't think it's that complicated. I think what this court said was mere arms flight isn't enough, but the implication is it doesn't require a ton more because it's pretty darn close to the threshold of recklessness. The threshold of recklessness is the same one that appears, the same language that appears in the model penal code, the same one addressed by the Supreme Court in Borden. And it's just not that high a threshold. I mean skiing really fast, turning too fast in a go-kart when you have a kid... ...continue to hold the weapon as you run. That's more aggravated to put it under the car. If he has the weapon concealed on his person, what this court has held is not reckless, it's fleeing without touching it or doing anything else. And that's understandable because nobody's seeing you wave the gun or display the gun like there was in Jefferson. If you then take it out, and he didn't put the gun down and then flee. It's the opposite. He fled with the gun. Then he put it somewhere where who knows who could have found it. High likelihood that someone in his crowd would have found it. I'm glad you said it because what the record shows is that the police came and they saw him point the weapon at a woman, right? Yes. Right? They saw that? Yes. And then they don't say exactly whether or not he ran because they said something to him. They said, we said something to him. So they were in basically our sight of him the whole time. No, Your Honor. They lost what the district court adopted without dispute. I see I'm out of time. Go ahead. Let me address your question. Go ahead. On page 122 of the joint appendix, it says the officers weren't able to immediately confront the defendant because of the crowd of people. So he took cover. I'm telling you, that's what I'm talking about. Read what the statement about terms of what he said. He said that he was that they saw him. And then, yes, they saw him with a gun. And then a short distance he was hiding. I don't think it specifies the distance. It doesn't say short distance. It may. But what we what I don't know is. In a short distance, he was subsequently found behind the shed. But that's what it says, right? Short distance. So in a short distance, they saw him do this in a short distance. He had managed to get away from them, put it on a car. And then and nothing in here in terms of what the distance is or who was around at the time in terms of the crowd. Right. No, it very specifically says he they couldn't confront him immediately due to this crowd of people standing. They couldn't confront him, but they could see what he was doing. It doesn't say that, but it did. It says they found him. I don't think it says that they could see what he was doing when he put the gun under the car. No, not under the car. I'm talking about what is important at the lady. Oh, yes. No, they saw that. Sure. And how close were they at that point? They were close enough to see him. I don't know how close more specifically. They could see him out of a crowd of people. He was pretty close to him. At the time they saw him point the gun, but not necessarily at the time they apprehended him or at the time that they they they they found the gun under the car. So the plus is the fact that he hit another car. Yes. Near a crowd of people. That's the plus. And I see my time is up. If this court has no further questions, I'll ask this court to affirm the judgment of the district court. Thank you. Certainly. Kelsey, you have anything further? Yes. Thank you. Your Honor, on JA 121, it does say that they saw Mr. Henderson shove a female to the ground, observe him armed with a rifle. And at one point, observing him pointing the firearm at the victim, they gave loud commands to Henderson, who fled the area. He was subsequently located hiding behind his shed a short distance away. So they observed him. They knew where he was. He didn't encounter. There's nothing else other than the firearm under the car. And I know this court had concerns in Chivas with regards to the statement of relevant conduct. It's the same thing here. The government puts in things that are not presented as submitted to the probation officer and the statement of relevant conduct and wants the court to take it as fact. They could have called the officer at the sentencing hearing to support the enhancement and say, this is what we see. Everybody was endangered, etc. You don't have that on the court. The same way you discounted what was in Chivas' statement of relevant conduct, you should do that here. Your Honor, the government did not charge Mr. Henderson with violating 922 G8. And the court should not allow that enhancement. The 2K2.1 talks about when you talk about the enhancement. And I think I cited that in my brief. On page 11, a firearm is possessed in connection with another offense if the offense facilitated or had the potential of facilitating the other offense. The DVPO was against somebody else. How did his possession of a firearm, the felon, facilitate domestic violence protective order against somebody who was not even present at the scene? As this court held in United States v. Jenkins, also cited in my brief 566F3-160-2009 case, the requirement is satisfied if the firearm had some purpose or effect with respect to the other offense. Here, the DVPO, including if the firearm was present for protection or to embolden the actor. But the requirement is not satisfied if the firearm was present due to mere accident or coincidence. The firearm possession had nothing to do violation of the domestic violence protective order. Allows the court to find not only that the reckless endangerment enhancement should not have applied, but that it was improper to find that the same possession of a firearm is used to enhance his sentence for being under a domestic violence protective order. The government had ample opportunity to charge him, did not charge him. He had no notice, as I argued previously in the Lockhart case, where he had no notice that this enhancement would apply. In fact, at his plea and Rule 11 hearing, the only enhancement Mr. Henderson was told about was that if you are subject to an Armed Career Criminal Enhancement Act, you will be looking at a sentence that's more than 10 years. That's all he knew that could apply. Nothing about violating a protective order and all those enhancements. So it allows the court to find that the court clearly had remanded the case for resentencing without the enhancements. Thank you. Thank you, Ms. Okwawa. I note that you were caught upon it on behalf of the Fourth Circuit. I want to thank you for doing that. Our court relies on lawyers to take cases like this, and we appreciate it very much and note your service. As well, Mr. Unright, your able representation of the United States. We're going to ask the court to adjourn for the day, and we'll come down to recouncil. Thank you. This honorable court stands adjourned until tomorrow morning. Godspeed to the United States and this honorable court.
judges: Roger L. Gregory, G. Steven Agee, Robert S. Ballou